UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNA C. RICHARDS, individually, | : | |
| and on behalf of others similarly | : | |
| situated, | : | |
|      Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:04-cv-1638 (JCH) |
| FLEETBOSTON FINANCIAL CORP. | : | |
| et. al., | : | |
|      Defendants. | : | MARCH 31, 2006 |

**RULING ON DEFENDANTS' MOTION TO CERTIFY CLASS [Doc. No. 19]**

**I.      INTRODUCTION**

Plaintiff Donna C. Richards is an employee of defendant FleetBoston Financial

Corp. ("Fleet"), a participant in the defendant FleetBoston Pension Plan ("Amended

Plan"), and a former participant in Fleet's former pension plan, a traditional defined

benefits plan ("Traditional Plan").  This ruling presumes familiarity with the court's ruling

on the defendants' motion to dismiss, issued earlier today.  The earlier ruling describes

the terms of the Amended Plan that are at issue in this case and the ways in which they

are alleged to have violated ERISA.  In that earlier ruling, the court dismissed Counts II,

III, VI, and all claims against Fleet Financial Corporation that were asserted pursuant to

ERISA § 502(a)(1)(B).[1]  It denied the motion to dismiss with respect to the remaining

claims.

In Count I, Richards alleges that the Amended Plan, as a cash balance account

---

[1]Therefore, the court does not consider the arguments for and against class certification with respect to these counts.

plan, violates ERISA § 204(b)(1)(H)(i), which prohibits plan rules that reduce "the rate of an employee's benefit accrual . . . because of the attainment of any age,"  29 U.S.C. § 1054(b)(1)(H)(I).  In Count IV, she alleges that the defendants failed to notify her and other participants of a significant reduction in the rate of future benefit accrual 15 days prior to the effective date of the Amended Plan, thereby violating ERISA § 204(h), 29 U.S.C. § 1054(h).  In Count V, she alleges that the defendants failed to provide an adequate Summary Plan Description ("SPD"), in violation of ERISA § 102, 29 U.S.C. § 1022. Richards moves the court to certify a class consisting of any and all persons who:

> (a) are former or current Fleet employees who on December 31, 1996 [the day before the Amended Plan's effective date] were not at least age 50 with 15 years of vesting service, and
>
> (b) participated in the Fleet Pension Plan before January 1, 1997, and
>
> (c) have participated in the Fleet Pension Plan at any time since January 1, 1997.

The Amended Plan uses hypothetical cash balance accounts to calculate retirement  benefits for its participants.  Each quarter, a certain amount is added to an employee's hypothetical cash balance account, calculated as the sum of a certain percentage of the portion of that employee's compensation that falls below the social security wage base, a higher percentage of the employee's compensation above the social security wage base, and an interest credit.  For participants who had participated in the Traditional Plan before its amendment and who were not at least age 50 with 15 years of vesting service as of December 31, 1996, the Amended Plan calculates retirement benefits using a "greater of" formula.  A retiring participant receives the

2

greater of the "frozen" benefit derived from the Traditional Plan terms and the hypothetical cash balance account balance  The frozen benefit is often larger than the opening hypothetical cash balance account, because the opening balance for the cash balance account is calculated as the frozen Traditional Plan benefit minus early retirement subsidies.  The idea that an employee covered by these terms does not actually accrue any new benefits under the Amended Plan until the value of the hypothetical cash balance account exceeds that of the frozen Traditional Plan benefit is known as the "wear-away" effect.  It is allegedly exacerbated by an actuarial assumption and interest rate used in calculating the opening balance of the cash balance account.  See Compl. ¶ 35.

## II.    STANDARD OF REVIEW

Richards bears the burden of showing that the class she has proposed meets the requirements for class certification.  See Caridad v. Metro-North Commuter Railroad, 191 F.3d 283, 291 (2d Cir. 1999); Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 484 (2d Cir. 1995).  In ruling on a motion for class certification at the present stage of the litigation, the court accepts the factual allegations of the Complaint as true.  Shelter Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n.15 (2d Cir. 1978) (internal citations omitted).  It may also consider affidavits that a plaintiff has submitted in support of her motion for class certification, see id., and affidavits a defendant has submitted in opposition to the motion for class certification, see, e.g., Panzirer v. Wolf, 663 F.2d 365, 368-69 (2d Cir. 1981), vacated as moot, Price Waterhouse v. Panzirer, 459 U.S. 1027 (1982).

Before certifying a class, the court must conduct a "rigorous analysis" and be

3

"persuaded that the prerequisties of Rule 23(a) have been met." <u>Gen. Tel. Co. v.</u>

<u>Falcon</u>, 457 U.S. 147, 161 (1982).

> Nevertheless, a motion for class certification is not an occasion for examination of the merits of the case. <u>See</u> <u>Sirota v. Solitron Devices, Inc.</u>, 673 F.2d 566, 570-72 (2d Cir.1982). As the Supreme Court has stated, "[N]othing in either the language or history of Rule 23. . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177 . . . (1974).

<u>Caridad v. Metro-North Commuter R.R.</u>, 191 F.3d 283, 291 (2d Cir.1999).   The Second

Circuit has held that "Rule 23 is given liberal rather than restrictive construction, and

courts are to adopt a standard of flexibility."  <u>Marisol A. v. Giuliani</u>, 126 F.3d 372, 377

(2d Cir. 1997) (internal citation omitted).

## III.   DISCUSSION

### A.   Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the following

prerequisites to class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly an adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).  These requirements are commonly referred to as "numerosity,"

commonality," "typicality," and "adequacy." <u>See, e.g.</u>, <u>Cruz v. Coach Stores, Inc.</u>, 202

F.3d 560 (2d. Cir. 2000).

The defendants do not contest that Richards has met her burden of proving

numerosity.  However, they argue that she has failed to meet her burden of showing adequacy, commonality, and typicality.  "The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (internal citation, quotation marks, ellipses, and brackets omitted).  The court begins by considering adequacy, but many of the conclusions reached in that analysis will inform its holdings on typicality and commonality.

### 1.    Adequacy of Representation

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997) (internal citation omitted).  "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  Id. at 625-26 (internal citation and quotation marks omitted).  Rule 23(a)(4) "requires courts to ask whether plaintiff's interests are antagonistic to the interest of other members of the class."[2]  In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 142 (2d Cir. 2001) (internal citation

---

[2]Rule 23(a) also requires that the lead plaintiff's attorney "be qualified, experienced, and generally able to conduct the proposed litigation."  Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968) [hereinafter Eisen II]; see also Weber v. Goodman, 9 F.Supp.2d 163, 171 (E.D.N.Y. 1998) (citing Eisen II); Walsh v. Northrop Grumman Corp., 162 F.R.D. 440, 447 (E.D.N.Y. 1995) (same).  The defendants do not dispute that Attorney Moukawsher meets this standard, and the court finds that he satisfies the requirements for class counsel.

and quotation marks omitted).  Disagreement as to the type of damages sought,

however, does not mean representation is inadequate.  See, e.g., Walsh v. Northrop

Grumman Corp., 162 F.R.D. 440, 447 (E.D.N.Y. 1995) (quoting Robertson v. National

Basketball Ass'n, 389 F.Supp. 867 (S.D.N.Y. 1975) (holding that, even though different

plaintiffs sought different types of damages, "all players, past and present, seek

damages for the same acts")); Ouellette v. Int'l Paper Co., 86 F.R.D. 476, 480 (D.Vt.

1980) (holding that the contention that "issues going to proof of damages" would create

antagonism among class members was "easily disposed of by noting that there is no

necessity that all issues be tried in one proceeding.  The class aspects may be tried

before the individual damage claims, if that should prove necessary.").

The defendants argue that Richards has interests antagonistic to those of some

putative class members.  The argue, first, that "[t]he source of the conflict comes from

the primary remedy Plaintiff seeks:  'A declaration that the cash balance amendment to

the FleetBoston Financial Pension Plan which purportedly took effect on January 1,

1997 was ineffective and that the plan in place prior thereto is still in force and effect.'"

Defs.' Mem. Opp. Plf.'s Mot. Class Cert. at 8 [Doc. No. 68] (quoting Compl. Prayer for

Relief ¶ 1 [Doc. No. 1]).  They argue that some members of the proposed class are

better off under the Amended Plan than they would be under the Traditional Plan and

that it would be improper to bind them to a non-opt-out class.

In support of this argument, the defendants have submitted a declaration by

Christopher Bone, an actuary who has reviewed documents concerning some subset of

plan participants.  Although Rule 26 of the Federal Rules of Civil Procedure is

concerned with preparation for trial and does not contemplate the use of experts to

6

oppose a motion for class certification at the motion to dismiss stage, the defendants are effectively submitting expert testimony in support of their position on class certification.  Based upon representations made by counsel for both sides at oral argument, it appears that the defendants did not disclose any data underlying Bone's conclusions to the plaintiff until approximately a week before oral argument on this motion, and that, as of March 27, they still had not disclosed all of the underlying data. Although the court is generally permitted to consider affidavits submitted by a defendant,  see, e.g., Panzirer v. Wolf, 663 F.2d 365, 368-69 (2d Cir. 1981), vacated as moot, Price Waterhouse v. Panzirer, 459 U.S. 1027 (1982), in the present situation it finds that it would be unfair to the plaintiff to consider the Bone Affidavit in this ruling.

The court finds that Richards can adequately represent the interests of the class as she has proposed it.  So far as the court can determine at the present stage in the litigation, based upon the terms of the Amended Plan and Richards' complaint and affidavit, Richards' surviving claims allege violations of statutory ERISA rights held by all of the putative class members.  The surviving claims in Richards' Complaint are based solely on plan terms and plan documents applicable to all class members.  The claim, in Count I, that the cash balance terms violate ERISA section 204(b)(1)(H)(I), states a violation of all putative class members' rights because all are subject to the challenged cash balance account system merely by virtue of their participation in the plan.  The claims in Counts IV and V allege illegal failures to disclose the same elements of the Amended Plan that form the factual basis for Count I, as well as the wear-away effect. Richards' complaint, read alongside the plan terms themselves, gives rise to a reasonable inference that all members of the putative class would experience at least

7

some wear-away effect, because they are all subject to the "greater of" formula.  See Compl. ¶ 30-33; Amended Plan SPD, Plf.'s Mem. Opp. Mot. Dismiss, Ex. A at 21 [Doc. No. 40].   This is so regardless of whether their overall benefits have grown faster than they otherwise would have as a result of the 1997 plan amendment.  Moreover, Richards has not alleged disclosure failures specific to her, but rather failures that would affect all putative class members. For the reasons discussed in Part IV.E. of this court's ruling on the defendants' motion to dismiss, the defects in disclosure themselves are significant enough to establish a presumption of likely prejudice, common to all members of the class, and this presumption has not been rebutted.  See Frommert v. Conkright, 433 F.3d 254, 267 (2d Cir. 2006) (quoting Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 112 (2d Cir. 2003)).

For these reasons, the members of the proposed class share Richard's claims. Even if the court were to accept the defendants' allegation that some class members would prefer to receive the greater benefits afforded them by the Amended Plan, with its alleged violations of ERISA, than to receive benefits that they would have received had Fleet kept the Traditional Plan in place, does not mean that the court should exclude those individuals from a class that is created to vindicate their ERISA-created rights.  See J. John Jacobi v. Bache & Co., Inc., 16 Fed. R. Serv. 2d 71 (S.D.N.Y. Feb. 8, 1972) (Callahan) (holding, in denying a challenge to certification of a Rule 23(b)(1) class, that "the object of an anti-trust action is the restoration of competition to the injury involved:  the fact that some members of the class may differ as to the desirability of a particular remedy for the anti-trust violation, or even desire the maintenance of the status quo, does not preclude their being included within the class bringing the action),

8

cited in Alba Conte & Herbert B. Newberg, 1 Newberg on Class Actions § 3:30 (4th ed. 2005); see also  Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920, 937 (2d Cir. 1968) (holding that, where a complaint alleged discrimination against particular races by city housing relocation program and questions of fact common to all members, the "fact that some members of the class were personally satisfied with the defendants' relocation efforts is irrelevant."), cited in 1 Newberg on Class Actions § 3:30; Groover v. Michelin N. Am., Inc., 192 F.R.D. 305, 306, 307 n. 1 (M.D.Ala. 2000) (holding that "the fact that some class members may be satisfied with the welfare benefits they are currently receiving, notwithstanding any alleged contractual violation, and would prefer to maintain the status quo and leave violations of their rights, if violations exist, unremedied is not dispositive under Rule 23(a)," but not reaching merits of defendant's argument that some class members' benefits actually increased under the "current system").[3]

The defendants assert that the Seventh Circuit held that "class certification should be denied when members of the proposed class benefit from different ERISA plan formulas."  Defs.' Mem. Opp. Plf.'s Mot. Class Cert. at 13 [Doc. No. 68] (citing United Independent Flight Officers, Inc. v. United Air Lines, Inc., 756 F.2d 1274 (7th Cir.

---

[3]Even if the court found that Richards could not adequately represent class members who wanted to maintain the Amended Plan as it currently operates, which is not its holding, this would not necessarily prevent class certification.  There is some precedent for the proposition that the dissenting class members' interests could be adequately represented by the defendants in this case, who share the same goal of preserving the Amended Plan.  See Curley v. Brignoli, Curley & Roberts Assoc., L.P., 915 F.2d 81, 85 (2d Cir. 1990) (citing with approval Lefebvre v. Kelly, No. 83 CV 3211 (ERK), 1987 WL 12036 (E.D.N.Y. May 21, 1987) ("When the interests of antagonistic class members are adequately represented by the class' opponents, the requirements of due process are satisfied such that a class can be certified.")). Although Curley and Lefebvre dealt with Rule 23.1 rather than Rule 23, Lefebvre cited solely Rule 23(a) cases as support for this holding.  See 1987 WL 12036, at *4 (citing Horton v. Goose Creek Independent Sch. Dist., 690 F.2d 470, 487 (5th Cir. 1982); Dierks v. Thompson, 414 F.2d 453 (1st Cir. 1969); Stolz v. United Bhd. of Carpenters & Joiners, 620 F.Supp. 396 (D.Nev. 1986)).

1985).  However, the cited case does not state such a broad proposition.  <u>United</u> did state that "[a]t least some class members oppose the benefit changes for which plaintiffs sue."  <u>Id.</u> at 1284.  However, the decision it was reviewing rested also on several other potential conflicts.  Moreover, the case it was reviewing was at the summary judgment stage, meaning that the court likely had far more information about potential conflicts of interest than is available to this court at the motion to dismiss stage.  Finally, the Court of Appeals was reviewing a district court judge's denial of class certification under the deferential abuse of discretion standard.   <u>Id.</u> at 1283-84.

In addition to the adequacy argument discussed above, the defendants argue that Richards cannot adequately represent any class members' interests because "<u>all</u> putative class members, regardless of their circumstances, have derived a significant advantage from" the provision in the Amended Plan that permits them to take their benefits as a lump sum upon termination of employment.  Def.'s Mem. Opp. Plf.'s Mot. Class Cert. at 12 [Doc. No. 68] (citing Ex. B, Sahakian Decl. at ¶ 5 (stating that vast majority of retirees in class took lump-sum distribution)) (emphasis in original).  The Traditional Plan did not have this feature.  Even if the court could assume at this stage in the litigation that class members do prefer a lump-sum distribution, a question it does not decide, this conclusion would go only toward the question of which remedy class members would seek, which does not affect the viability of the class at this stage in the litigation.  <u>See, e.g.</u>, <u>Walsh</u>, 162 F.R.D. at 448.

Another court in this district confronted a case factually similar to the present case in <u>Amara v. CIGNA Corp.</u> No. 3:01CV2361 (DJS), 2002 U.S. Dist. LEXIS 25947, at*6-*7 (D.Conn. Dec. 20, 2002).  While recognizing that "providing the relief requested

in the complaint on a class-wide basis may actually harm some members of the class," he concluded that "this problem can be addressed when the court determines what remedy should be provided if plaintiff prevails on the merits of her claims."  Id.

This court reaches the same conclusion as a result of its adequacy analysis. The question of remedies is not appropriate for resolution at this stage in the litigation, and the court is not required to impose the particular remedy requested by Richards even if she prevails on the merits of her claims.  Moreover, as part of its continuing duty to assure adequacy of representation in a class action suit, see Key v. Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986), the court may always decide to modify or decertify the class in the future.  These possibilities help to assure that no subset of the class would be deprived of due process as this case goes forward, even though Richards asks the court to certify a class that would not permit members to opt out.

## 2.    Commonality

The commonality requirement is met if the plaintiff's grievances share a common question of law or fact with potential class members.  "The commonality requirement is met if plaintiffs' grievances share a common question of law or fact."  Marisol A., 126 F.3d at 376.  Because Richards' surviving claims allege that the terms of the plan, in which all class members participate, violate ERISA, the court finds that she has shown common questions of law.

The court is unpersuaded by the defendants' argument that Counts IV and V require individualized assessments.  First, these claims do not require a showing of actual prejudice or individualized harm, but only "likely prejudice," which may be satisfied by the terms of the plan itself.  See Frommert v. Conkright, 433 F.3d 254, 267

11

(2d Cir. 2006); <u>Amara</u>, 2002 U.S. Dist. LEXIS 25947, at *9 ("The second count of the class complaint also turns upon a common legal question generally applicable to all members of the class:  whether CIGNA's SPD is misleading.").[4]   All defendants were participants in the same plan.

The defendants' remaining argument on Counts IV and V would require the court to reach the merits of Richards' claims, which is inappropriate in the present ruling.  <u>See Caridad v. Metro-North Commuter R.R.</u>, 191 F.3d 283, 291 (2d Cir.1999).  The defendants argue that the defendants are obligated to issue an ERISA § 204(h) notice only to participants whose significant reduction in future benefit accrual is reasonably expected.  Even if this is true, an issue the court does not reach, the plaintiff has adequately alleged facts giving rise to an inference that such a reduction would be reasonably expected for all class members, at least for purposes of the present stage of the litigation.  Under the standard for deciding a motion for class certification made at the motion to dismiss stage, the court is persuaded that the proposed class satisfies the commonality requirement.

### 3.    Typicality

"Typicality . . . requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  <u>Walker v. Asea Brown Boveri, Inc.</u>, 214 F.R.D. 58, 63

---

[4]The reasoning behind this conclusion is discussed in more detail in the court's ruling on the defendants' motion to dismiss.  The defendants have not argued that they intend to raise individualized defenses that would rebut the presumption of likely prejudice that may arise from the plan terms.

(quoting Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997)).  "Minor conflicts,

however, do not make a plaintiff's claims atypical; it is when the conflict goes to the very

subject matter of the litigation that the conflict will defeat the claim of representative

status." Walker, 214 F.R.D. at 63-64 (quoting Walsh v. Northrop Grumman Corp, 162

F.R.D. 440, 445 (E.D.N.Y. 1995)) (internal quotation marks omitted).  "Differences in the

degree of harm suffered, or even in the ability to prove damages, do not vitiate the

typicality of a representative's claims."  Ouellette, 86 F.R.D. at 480 (citing Sanders v.

Faraday Laboratories, Inc., 82 F.R.D. 99, 101 (E.D.N.Y. 1979)) (holding that "[p]roof of

defendant's liability . . . will benefit all members of the proposed classes, Eisen [II]; that

the damages, if any, may reach a de minimis level at some point among the class

members does not make the named plaintiffs' claims atypical").  Therefore, it is

unnecessary to determine whether Richards' damages are the same as those suffered

by others in the class.  In light of the reasoning discussed in the preceding sections, the

court finds that each class member's claim arises from the same course of events and

that each makes similar legal arguments to prove the defendants' liability.

The defendants argue that Richards is subject to individual defenses not

applicable to other class members.  "While it is settled that the mere existence of

individualized factual questions with respect to the class representative's claim will not

bar class certification, class certification is inappropriate where a putative class

representative is subject to unique defenses which threaten to become the focus of the

litigation." Walker, 214 F.R.D. at 64 (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec.

Corp., 222 F.3d 52, 59 (2d Cir. 2000)).  The defendants argue that Richards has failed

to exhaust administrative remedies, but the court has held, in its ruling on the

13

defendants' motion to dismiss, that exhaustion is unnecessary.  The defendants do not point to any other individualized defenses that would threaten to become a focus of the litigation.

The court finds, for the foregoing reasons, and on the basis of her asserted knowledge of the issues at stake in the litigation, that Richards has satisfied the requirements of Rule 23(a).

**B.    Rule 23(b)**

In addition to showing that the proposed class satisfies all four of the Rule 23(a) requirements, the plaintiff must show that the class fits within one of the categories in Rule 23(b).  See, e.g., Consol. Rail Corp., 47 F.3d at 484.  Rule 23(b) delineates three types of class actions.  Richards seeks certification of a class under subsection (b)(1) and (b)(2) of Rule 23.  These two subsections outline two of the three types of cases in which class certification is appropriate:  first, in Rule 23(b)(1), where the rights of either potential class members or the party opposing the class would be harmed by piecemeal adjudication, and second, in (b)(2), where the class seeks injunctive or declaratory relief against a party who has itself treated the class as a group in the context of its own acts or admissions.

The court begins by considering the request for certification under Rule 23(b)(2). Rule 23(b)(2) provides for class litigation where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). The relief sought need not be solely equitable

14

in nature: when both equitable and monetary relief are sought, the district court may still certify the class under subsection (b)(2) if it determines that certification is appropriate "in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case." Parker v. Time Warner Cable, 331 F.3d 13, 20 (2d Cir. 2003) (internal quotations omitted). As the Second Circuit explained in Parker, when making a determination about subsection (b)(2) certification, the district court must first determine whether, "even in the absence of possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought." Id. (quoting Robinson v. Metro-North Commuter R.R., 267 F.3d 147 (2d Cir.2001)). Next, the court must also consider whether "the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." Id.

As the defendants admit, Richards seeks injunctive and declaratory relief. See Compl. Prayer for Relief;[5] Defs.' Mem. Opp. Mot. Class Cert. at 35 [Doc. No. 68]. The

---

[5]Her Prayer for Relief requests:

1. A declaration that the cash balance amendment to the FleetBoston Financial Pension Plan which purportedly took effect on January 1, 1997 was ineffective and that the plan in place prior thereto is still in force and effect;

2. A declaration that Donna C. Richard's benefit accruals under the FleetBoston Financial Plan must be unconditional and not reduced because of age;

3. An injunction prohibiting the application of the FleetBoston Financial Plan's reductions in the rate of benefit accruals because of age and its conditioning of benefits due under the plan;

4. An injunction ordering appropriate equitable relief to determine plan participant losses caused by Fleet's payment of benefits under the unlawful cash balance terms of the Fleet Plan and requiring the payment of additional benefits as appropriate under the Court's ruling;

5. An injunction ordering appropriate equitable relief to determine plan participant losses caused by Fleet's failure to inform plan participants when their frozen accrued benefits under the Traditional Plan Terms exceed the amount of their cash balance accounts and requiring the payment of any benefits

court finds that reasonable plaintiffs would bring this suit to obtain injunctive and declaratory relief even in the absence of monetary relief.  See Amara v. CIGNA Corp., No. 3:01CV2361 (DJS), 2002 U.S. Dist. LEXIS 25947 (Dec. 20, 2002) (holding that claims including those similar to Counts I and V of Richards' Complaint, seeking equitable relief pursuant to ERISA § 502(a), 29 U.S.C. § 1152(a), "fall squarely within the purview" of Rule 23(b)(2) "because they seek injunctive relief, pursuant to ERISA, generally applicable to the entire class.").

The defendants argue that some putative class members would not want the injunctive relief that Richards seeks because it would disadvantage them financially to revert to coverage under the Traditional Plan terms.  However, the court may infer from the complaint and plan documents that all of the putative class members would benefit from at least some injunctive relief if the plaintiff prevails.

The defendants argue further that the relief Richards seeks could not be effected for a subset of plaintiffs who have retired and taken a lump-sum distribution, because they could not benefit from solely prospective relief.  The defendants argue that "the only real interest of these former participants is the possibility of obtaining monetary

---

unpaid by reason thereof;

6. Attorney's fees pursuant to ERISA §502 (g);

7. Interest;
8. Costs;

9. An order for appropriate equitable and remedial relief to ensure that relief granted hereunder is implemented on a class-wide basis,

10. Such other equitable and remedial relief as the Court deems appropriate, and award attorneys' fees and expenses.

Request 5 is no longer at issue in light of the court's ruling on the motion to dismiss.

relief." These objections do not prevent (b)(2) certification. For purposes of subsection (b)(2), an injunction requiring the payment of monies unlawfully withheld in the past may be considered injunctive relief. See Walsh, 162 F.R.D. at 448 (holding that claim was for injunctive relief, not monetary damages, for 23(b)(2) purposes, where plaintiffs asked the court to restore them to their positions prior to a merger, with restitution of benefits and back pay); cf. Morgan, 222 F.R.D. at 236 (holding that former employees in proposed race discrimination suit class would not pursue a claim for purely injunctive relief, where they could not have benefitted from any of the injunctive relief requested, and where the plaintiffs had made claims for compensatory and punitive damages, in addition to lost wages). Moreover, Richards seeks an injunction requiring "appropriate equitable relief to determine plan participant losses caused by Fleet's payment of benefits under the unlawful cash balance terms of the Fleet Plan and requiring the payment of additional benefits as appropriate under the Court's ruling." Compl. Prayer for Relief ¶ 4. This relief could benefit retired employees, even if they took a lump sum payment. Finally, other courts have held that injunctive relief may be available under ERISA § 502(a)(3) to retired employees no longer entitled to benefits under the terms of their former pension plan. See Varity Corp. v. Howe, 516 US 489, 515 (1996); Broga v. Northeast Utilities, 315 F.Supp.2d 212, 256 (D.Conn. 2004).

For all of the foregoing reasons, the court concludes that the injunctive and declaratory relief sought by the plaintiff would be both reasonably necessary and appropriate, should the plaintiff class succeed on the merits. See Parker, 331 F.3d at 20.

The defendants argue further that retirees lack statutory standing to pursue

17

claims for equitable relief under ERISA, and therefore would be improperly included in a (b)(2) class.   As relevant here, a plaintiff must be a "participant" to pursue a claim under ERISA § 502(a)(1)(B) or (a)(3).  29 U.S.C. § 1132(a)(1)(B), (a)(3).

> The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

Id. at § 1002(7).  "The Supreme Court has construed § 502 narrowly to allow only the stated categories of parties to sue for relief directly under ERISA." Nechis v. Oxford Health Plans, Inc.,  421 F.3d 96, 101 (2d Cir. 2005) (citing Franchise Tax Board v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1 (1983)).  The defendants' argument that some putative class members lack standing relies on the Second Circuit's holding in Nechis that, "[p]articipants can lose standing to sue if, despite their having suffered an alleged ERISA violation, their participant status has been terminated before suit is filed." 421 F.3d at 101 (internal citations omitted).

However, in determining whether an employee has ceased to be a "participant," the court considers whether the plaintiff in question "may become eligible" to receive a benefit in the future.  "In order to establish that she may become eligible for benefits, [a plaintiff] must have a colorable claim that (1) she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future."  Id. at 102 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989)).  The Firestone court held that employees who "have a colorable claim to vested benefits" may be considered participants because they may become eligible to receive benefits.  The plaintiff in

18

Nechis had no such claim, because her claim involved welfare benefits, which, unlike

pension benefits, do not vest.  See Frommert v. Conkright, 433 F.3d 254, 264 (2d Cir.

2005) (internal citations omitted).  In contrast, the members of the putative class who

have already taken lump sum benefits do appear to have colorable claims that the

Amended Plan violated ERISA in such a manner as to deprive them of vested benefits.

Although the Tenth Circuit has held that employees who took lump-sum

distributions upon the termination of their employment were not "participants" within the

meaning of ERISA, Raymond v. Mobil Oil Corp., 983 F.2d 1528, (10th Cir. 1993), the

Second Circuit has expressed disagreement with this holding.  Mullins v. Pfizer, Inc., 23

F.3d 663, 667-68 (2d Cir. 1994).   The Mullins court held that, "Congress intended the

statutory scheme [in ERISA], in conjunction with state law, to afford broad protection,"

and that statutory standing should be determined by asking whether the plaintiff fell

within the "zone of interests" of the statute.  Id. at 668.  It concluded that it would be

unfair to prohibit the plaintiff, who had allegedly taken early retirement and terminated

participation in his pension plan in reliance on misleading statements by plan

administrators, from pursuing a claim for fraudulent misrepresentation under ERISA.

Id. at 667-68.  Mullins could not have brought suit before retirement because he was

not then aware of the misrepresentation.  Similarly, Richards alleges that the plan

participants had no notice that the cash balance plan was age discriminatory, nor notice

of the wear-away effect.  In light of Mullins, a participant who took a lump sum

distribution upon retirement and claims that some vested benefit was illegally denied to

her because of an administrator's miscalculation or breach of fiduciary duty remains a

participant under ERISA.  See O'Connell v. Kenney, No. 3:03CV0845 (DJS), 2003 WL

22991732, at *2 (D.Conn. Dec. 15, 2003); <u>Gray v. Briggs</u>, No. 97 CIV. 6252 (DLC), 1998 WL 386177 (S.D.N.Y. July 7, 1998).  "Where . . . the plaintiffs allege that the distributions they received were less than they were entitled to on account of the defendants' wrongful conduct during the term of the plaintiffs' employment, the plaintiff's claim is for 'vested benefits.'"  <u>Gray</u>, 1998 WL 386177, at *4.  "In other words, the plaintiffs seek benefits to which they were entitled at or before the time of their termination, but which they did not receive because of the defendants' wrongdoing.  It would defeat the purposes of ERISA to deny standing in this context."  <u>Id.</u> (citing <u>Mullins v. Pfizer, Inc.</u>, 23 F.3d 663, 666-68 (2d Cir. 1994)).

The court concludes that the surviving claims, while premised on the terms of the plan and failures of disclosure rather than the breach of fiduciary duty in the investment of funds at issue in <u>Gray</u>, similarly state claims for benefits to which the retired class members who received lump sums were entitled prior to their retirement.  Therefore, the court holds that the plaintiff has established that all members of the proposed class have statutory standing, based on the record currently before the court.  It finds certification of the proposed (b)(2) class to be appropriate.

Richards also seeks certification of a class under Rule 23(b)(1).  Richards did not plead a Rule 23(b)(1) class in her complaint.  <u>See</u>  Compl. ¶ 15.  Although another court in this district has denied a motion to certify a Rule 23(b)(1) class as untimely where a plaintiff had failed to state in her complaint that she was seeking to certify a class under this particular subsection, <u>Morgan v. Metropolitan District Comm'n</u>, 222 F.R.D. 220, 235 n.8 (D.Conn. 2004), Richards filed her motion for class certification only three months

after her complaint, and the court does not find that this request is untimely.[6]

Nevertheless, in light of its decision to certify a (b)(2) class, and the failure to plead a

(b)(1) class, the court does not reach the merits of whether the proposed class could be

certified under Rule 23(b)(1) at this time.  Should Richards wish to amend her complaint

to seek Rule 23(b)(1) certification, she may do so within two weeks of this ruling and

reclaim the relevant portion of the instant motion for class certification or file a renewed

motion for class certification under 23(b)(1).  The court notes that additional briefing

focused specifically on whether she seeks a class under Rule 23(b)(1)(A) or Rule

23(b)(1)(B), or both, would be appropriate in the event that Richards chooses to pursue

a Rule 23(b)(1) certification.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part the

plaintiff's Motion for Class Certification and certifies the proposed class pursuant to

Rule 23(b)(2) of the Federal Rules of Civil Procedure.

---

[6] No local rule in this district governs the time within which motions for class certification must be filed, cf., e.g., Bragg v. Perales, No. Civ.-90-602E, 1991 WL 37844, at *2 n.4 (W.D.N.Y. Mar. 8, 1991), and the plaintiff filed the motion for class certification under Rule 23(b)(1) soon after the commencement of this litigation.  The court finds no prejudice to the defendants or potential class members in permitting Richards to move for (b)(1) class certification three months after she filed her complaint, particularly when she alerted these parties that she intended to move for some type of class certification at the time she filed her Complaint.  Cf. La Bonte v. Gates, 406 F.Supp. 1227, 1229 (D.Conn. 1976) (holding that "it would turn the theory of class representation on its head and open the door to potential serious abuse to allow a plaintiff or a defendant to fully present his case and then, after weighing the strength of his own case or the weakness of his opponent's, to convert his individual action into a class representation," because of notice concerns).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 31st day of March, 2006.


/s/Janet C. Hall
Janet C. Hall
United States District Judge