UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DONNA C. RICHARDS, individually, | : | |
| and on behalf of others similarly | : | |
| situated, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:04-cv-1638 (JCH) |
| FLEETBOSTON FINANCIAL CORP. | : | |
| ET. AL., | : | |
| Defendants. | : | JULY 21, 2006 |

**RULING ON DEFENDANTS' SECOND MOTION TO DISMISS [Doc. No. 128]**

**I.     INTRODUCTION**

Following this court's ruling granting in part and denying in part the defendants'

first motion to dismiss, the plaintiff, Donna C. Richards, filed an Amended Complaint

[Doc. No. 124].  Richards has withdrawn her claim that the Plan requires a forfeiture in

violation of ERISA § 203(a) (Count II of the original Complaint).  Thus, the Amended

Complaint, and this ruling, refer to the alleged violation of ERISA § 204(b)(1)(B), as

Count II, although it was Count III of the original Complaint.  Similarly, the Amended

Complaint, and this ruling, refer to the alleged violation of ERISA § 204(h) ("Failure to

Supply Advance Notice of a Significant Benefit Decrease") as Count III, the alleged

violation of ERISA § 102 ("Failure to Provide an Adequate Summary Plan Description

(SPD)") as Count IV, and the alleged violation of ERISA § 404 ("Breach of Fiduciary

Duty") as Count V.

The defendants have moved pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure to dismiss Counts II and V of the Amended Complaint.

## II.    FACTUAL BACKGROUND[1]

The Amended Complaint alleges facts that are substantially identical to those in the original Complaint, with only a few exceptions.  The court assumes readers' familiarity with the facts of the original Complaint as summarized in the court's ruling on the defendant's first motion to dismiss.

Richards is an employee of Bank of America and participant in the FleetBoston Financial Pension Plan ("Amended Plan"), now administered by Bank of America.  She had been a member of the FleetBoston Financial Corporation's (Fleet's) and predecessor banks' pension plans for years prior to January 1, 1997, when Fleet amended its traditional defined benefit plan ("Traditional Plan") to adopt the Amended Plan, a cash balance plan.  These terms are defined, and the Traditional and Amended Plan terms are described in more detail, in the court's ruling on the first motion to dismiss.

The Amended Plan provides that, upon termination of employment with Fleet, an employee who had participated in both the Traditional Plan and the Amended Plan[2] would receive the greater of her Cash Balance Account, under the Amended Plan, or her benefit under the Traditional Plan terms, frozen as of January 1, 1997 ("frozen benefit").  Id. at ¶ 32.  This rule, combined with the fact that the Amended Plan converted less than the full value of the benefits that Richards and other former

---

[1] See Part III, infra, for a discussion of the pleadings and other documents the court considers and the inferences it draws in ruling on the present motion.

[2] Employees who had been active participants in the Traditional Plan as of December 31, 1996, and were not age 50 with at least 15 years of vesting service as of that date, became participants in the Amended Plan.  Amended Plan Summary Plan Description ("SPD"), Defs.' Mem. Supp. Mot. Dismiss, Ex. B at 21 [Doc. No. 32].

Traditional Plan participants had accrued under the Traditional Plan to opening account balances under the Amended Plan terms, meant that the value of retirement benefits available to Richards and similarly situated participants will not increase past the frozen benefit that they had already accrued as of December 31, 1996, until the amount in the cash balance account reaches and then exceeds that amount.  The Amended Complaint alleges that Richards has not earned any new retirement benefits in the nine years she worked under the cash balance benefit terms.

The Amended Complaint further alleges that the Plan administrators failed to give participants advance notice that the Amended Plan terms would cause a significant decrease in their rates of future benefit accrual, that the SPD failed to adequately explain the wear-away effect or the way benefit accruals under the Amended Plan are reduced as participants age, and that the administrators concealed the value of participants' frozen benefits when issuing personal account statements.[3]

## III.    STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, the court takes the allegations of the Complaint as true, and construes them in a manner favorable to the pleader. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); see Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overrruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).  In this case, the court may also consider the 1997 Amended Plan document, the Amended Plan SPD, the Traditional Plan document, and the 1998 and 2004 personal plan statements that

---

[3]The specific statements that Richards alleges to be inadequate and misleading are discussed in further detail in Part IV, infra.

3

Richards has submitted.  The court may do so because these documents are integral to

the complaint and Richards relies upon them in her complaint.  Rothman v. Gregor, 220

F.3d 81, 88 (2d Cir. 2000); Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.

1991), cert. denied, 503 U.S. 960 (1992).

A Rule 12(b)(6) motion to dismiss tests the adequacy of the complaint.  United

States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004).  Thus, such a motion can be

granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41,

45-46 (1957).  A Rule 12(b)(6) motion cannot be granted simply because recovery

appears remote or unlikely on the face of a complaint.  Bernheim v. Litt, 79 F.3d 318,

321 (2d Cir. 1996).  "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims."  Id. (quotation

omitted).  "[W]hile bald assertions and conclusions of law will not suffice to state a

claim, the district court, before granting a motion to dismiss, must accept as true all of

the factual allegations set out in plaintiff's complaint, draw inferences from those

allegations in the light most favorable to plaintiff, and construe the complaint liberally."

Tarshis v. Riese Org., 211 F.3d 30 (2d Cir. 2000) (internal citations omitted); see

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v.

Scherer, 468 U.S. 183 (1984).

IV.    DISCUSSION

A.     133 1/3 Percent Rule (Count II)

The benefit accrual requirement at issue in Count II is set forth in ERISA section

4

204(b)(1)(B).  That paragraph reads,

> A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 1331/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year.

In its ruling on the defendants' previous motion to dismiss, the court dismissed Richards' claim that the wear-away effect created by the "greater of" formula described above violated this rule.  The court ruled that, if the Amended Plan is treated as having been in effect for all plan years as required by ERISA § 204(B)(1)(B)(i), employees such as Richards would never have accrued a benefit under the Traditional Plan, and would have started accruing benefits under the cash balance formula from the start of their employment.  Richards v. FleetBoston Financial Corp., 427 F.Supp.2d 150, 170-71 (D.Conn. Mar. 31, 2006).

Richards' amended Count II does not allege that the plan terms differed from those described in the court's previous ruling.  Rather, it alleges that, "[e]ven if the amendment that introduced the cash balance terms into the Plan language is deemed to have been in effect for every plan year . . . , the current plan language also includes the use of the Traditional Plan Terms and thus the Traditional Plan Terms must be treated as being in effect for every plan year too."  Richards argues that the Traditional Plan terms are "integral" to the Amended plan.  However, it would be impossible to treat all terms in both the Traditional and Amended Plans as having been in effect for all plan years, because some of the terms conflict.

To find that the Amended Plan terms violated the 133 1/3 percent rule with respect to employees who had participated in the Traditional Plan prior to the amendment and then transitioned to participation in the Amended Plan, the court would have to take into account the fact that the Amended Plan was not in effect prior to 1997.  Conversely, none of the allegations in the Amended Complaint change the fact that, if the court assumes that the Amended Plan has always been in effect, no employees would be subject to the wear-away effect, because all employees would have started their employment when the cash balance plan was already in place.

The court recognizes that the plan feature that Richards challenges here is not an "across-the-board increase[] in benefit rates made at some future time on behalf of all current employees regardless of period of service," which the Second Circuit identified as a type of amendment that did not violate the anti-backloading rule.  It also recognizes that Richards has alleged she was seriously disadvantaged by the "greater of" formula, and that Congress may not have considered this particular type of formula in drafting ERISA.  However, the court cannot ignore the clear instruction of ERISA § 205(b)(1)(B)(i) that "any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years."  ERISA  § 205(b)(1)(B)(i); see Langman, 328 F.3d at 71.[4]  Therefore, it grants the defendants' motion to dismiss

_____

[4]The cases that Richards cites as support of her backloading argument do not persuade the court otherwise.  Neither of the district court cases that she cites addressed the question of how to treat a plan amendment.  See Carollo v. Cement & Concrete Workers District Council Pension Plan, 964 F.Supp. 677, 683 (E.D.N.Y. 1997); Devito v. Pension Plan of Local 819 I.B.T. Pension Fund, 975 F.Supp. 258, 269 (S.D.N.Y. 1997).  Similarly, IRS Revenue Ruling 78-252, which found that a plan that offset employees' accrued benefits by social security benefits in the first twenty-five years of employment but not thereafter would violate the 133 1/3 percent rule, did not address the effect of a plan amendment. Richards also cites Esden v. Bank of Boston, 229 F.3d 154, 167 (2d Cir. 2000) for the general proposition that the defendants cannot

Count II of the Amended Complaint.

## B.    Breach of Fiduciary Duty (Count V)

In Count V, Richards alleges that the defendants breached the fiduciary duty required by ERISA § 404:

> ERISA  § 404(a)(1)(B) imposes a duty on fiduciaries (which include plan administrators) to 'discharge [their] duties with respect to a plan solely in the interest of the participants and . . . with the care, skill, prudence, and diligence under circumstances then prevailing that a prudent man acting in a like capacity and familiarity with such matters would use in the conduct of an enterprise of a like character and with like aims.'

Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 579 (2d Cir. 2006) (quoting 29 U.S.C. § 1104(a)(1)(B)).  Richards alleges that the defendants intentionally, recklessly, or negligently made several materially false statements, and further alleges that they failed to provide advance notice of a significant benefit decrease and to provide an adequate SPD.

### 1.    Reliance

The defendants argue that the court should dismiss Richards' claims for breach of fiduciary duty because she has failed to plead detrimental reliance.  They cite the Third Circuit's ruling in Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Research Fdn., which held that plaintiffs must plead detrimental reliance in any section 404 breach of fiduciary duty claim based on misrepresentation.  334 F.3d 365, 387 (3d Cir. 2003).  In 1995, the Second Circuit found a failure to allege detrimental

---

ignore the "mechanics of the plan," which include the "greater of" formula and frozen traditional plan benefits.  However, Esden similarly did not address the effect of a plan amendment, and the court does not find that the language Richards has quoted therein addresses the question of whether the court can consider the wear-away effect that Richards has experienced in determining whether the plan complies with the 133 1/3 percent rule.

reliance fatal to a breach of fiduciary duty claim, although the claim in question was not premised on misrepresentations or omissions in plan documents.  Siskind v. Sperry Ret. Program, 47 F.3d 498 (2d Cir. 1995).

However, the Second Circuit's more recent ruling in Burke v. Kodak Ret. Income Plan, which announced a likely prejudice standard for claims involving deficient SPDs, 336 F.3d 103 (2d Cir. 2003);  see also Richards v. FleetBoston Financial Corp., 427 F.Supp.2d 150, 172 (D.Conn. 2006), controls all of the fiduciary duty claims asserted here.[5]  Although Burke involved the sections of ERISA dealing specifically with SPD requirements, its reasoning that a detrimental reliance rule "imposes an insurmountable hardship on many plaintiffs" and "hardly advances the Congressional purpose of protecting the beneficiaries of ERISA plans by insuring that employees are fully and accurately apprised of their rights under the plan" also applies generally to fiduciary duty claims.  Although ERISA has more specific disclosure rules for SPDs than for other plan documents, section 404's general requirement that administrators discharge their duties "solely in the interest of the participants" shows a Congressional purpose to protect those participants, similar to the purpose behind the SPD rules.  Although a 2001 summary judgment ruling from this District required detrimental reliance for a fiduciary duty claim, Danis v. Cultor Food Science, Inc., 154 F.Supp.2d 247 (D.Conn. 2001) (discussing claim not premised on SPD), Danis was decided prior to Burke.  In the years following Burke, the Second Circuit has applied its likely prejudice standard to claims that a plan amendment violated sections 204(h) and 204(g)(1), Frommert v.

_____

[5]The defendants do not argue that Richards has failed to plead likely prejudice in her breach of fiduciary duty claim.

Conkright, 433 F.3d 254, 267 (2d Cir. 2006), and the Southern District of New York has

applied the likely prejudice standard to a fiduciary duty claim,  Weinreb v. Hospital for

Joint Diseases Orthopaedic Institute, 285 F.Supp.2d 382, 388 (S.D.N.Y. 2003)

(discussing claim premised on failure to provide SPD).  The court is not persuaded that

the Third Circuit cases requiring detrimental reliance accurately reflect Second Circuit

law.  Indeed, the Burke court specifically noted its disagreement with the Third Circuit

over the issue of whether detrimental reliance or prejudice is required for recovery in

cases involving deficient SPDs.  The court will not dismiss Richards' fiduciary duty

claims for failure to plead detrimental reliance.

### 2.    Alleged Misrepresentations

"[W]hen a plan administrator affirmatively misrepresents the terms of a plan or

fails to provide information when it knows that its failure to do so might cause harm, the

plan administrator has breached its fiduciary duty to individual plan participants and

beneficiaries."  Devlin v. Empire Blue Cross and Blue Shield,  274 F.3d 76, 88 (2d Cir.

2001) (quoting In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 57 F.3d 1255,

1264 (3d Cir.1995)); see also Varity Corp. v. Howe, 516 U.S. 489, 506 (1996) ("To

participate knowingly and significantly in deceiving a plan's beneficiaries in order to

save the employer money at the beneficiaries' expense is not to act 'solely in the

interest of the participants and beneficiaries.").  To support a claim for breach of

fiduciary duty, the plaintiff must show that the misrepresentations at issue are material;

that is, that "they would induce a reasonable person to rely upon them."  Ballone v.

Eastman Kodak Co., 109 F3d 117, 122 (2d Cir. 1997).

The defendants argue that the statements that Richards alleges to be false in

paragraphs 41 to 43 of her Amended Complaint were actually true representations of the Amended Plan terms.

        a.    Paragraph 41.  In paragraph 41 of the Amended Complaint, Richards alleges that Fleet "falsely promised plan participants 'your cash balance benefit builds steadily throughout the time you work at Fleet.  Each quarter Fleet makes pay credits and interest credits into an account with your name.'"  The defendants state that Richards drew this quote from the 1996 Employee Reference Guide ("Guide"). This Guide is not mentioned in the Amended Complaint, but regardless of whether the court considers the statement in isolation or in the context of the Guide, it finds that Richards has adequately alleged that it is misleading.

The defendants argue that the statement is "completely accurate."  They argue that the cash balance benefits do "build steadily throughout the time that a participant works at FleetBoston, and that the "greater-of" formula "is a separate and distinct concept that the Plaintiff does not allege was misrepresented."  Defs.' Mem. Supp. Mot. Dismiss Counts II & V [hereinafter "Defs.' Mem. Supp. Mot. Dismiss"] (Doc. No. 129).

However, the statement in the Guide appears to misrepresent the Amended Plan terms governing those participants who, like Richards, are subject to the wear-away effect. The Guide's description of the cash balance account as a "benefit" gives the impression that the employees' accrued benefits grow steadily over the course of their employment.  For employees subject to the wear-away effect like Richards, this is not the case.  While the <u>hypothetical</u> cash balance accounts may grow steadily as described in the Guide, the Amended Complaint alleges, and the defendants do not dispute, that Richards and similarly-situated participants have actually accrued no new

benefits in the nine years since the plan amendment.  Neither the statement quoted in

the Complaint nor surrounding language in the Guide alerts employees that the "cash

balance benefit" is merely a hypothetical account, or that a wear-away effect exists.  In

light of these alleged facts, the court cannot say that "it appears beyond doubt that the

plaintiff can prove no set of facts in support of [this] claim which would entitle [her] to

relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

           b.     Paragraph 42.  Paragraph 42 alleges that Fleet "answered a

hypothetical employee question: 'Can my pension benefit decrease under the new Fleet

Pension Plan?', with the answer 'No', by disingenuously observing:  'Whether you

participate in the cash balance benefit or the traditional benefit, you will never receive

less than the benefit you earned as of December 31, 1996,' omitting to mention that the

amendment caused many plan participants to lose substantial plan benefits to the

wear-away effect and the benefit accruals that decline with age.  Instead, Fleet

explained that a key reason it was adopting the cash balance benefit was because,

'The New Plan makes good sense for our employees.'"  The language quoted in

paragraph 42, like that in paragraph 41, is contained in the Guide.

       The defendants argue that the statements quoted in paragraph 42 were truthful,

because the plan amendment did not require a forfeiture of benefits previously accrued

under the Traditional plan.  Richards does not now argue that the amendment caused a

forfeiture of benefits, but rather responds that Fleet's statements could have deceived

participants into believing that their retirement benefits would continue to accrue at a

rate equal to or greater than that which would have existed under the Traditional Plan

terms.  The statement that a participant's pension benefit would not decrease under the

Amended Plan, and that a participant "will never receive less than the benefit [he or she] earned as of December 31, 1996," may correctly describe the Amended Plan terms, as described in the Amended Complaint, but only if one interprets the term "pension benefit" to refer to total accrued benefit, rather than to the rate of benefit accrual.  The court cannot find, at this stage in the litigation, that Fleet's statements would not have misled a reasonable participant into believing that his or her periodic benefit accruals would remain constant or increase under the Amended Plan, and Richards alleges that she and many other employees actually accrued zero new benefits following the plan amendment.  Additionally, Richards has adequately pled that the assurance that the plan amendment "makes good sense" for the employees is materially misleading, because she has pled that the plan amendment "significantly reduced the rate of future benefit accruals for many plan participants, including Richards."  Am. Compl. ¶ 38 [Doc. No. 124].  Therefore, the court denies the motion to dismiss the breach of fiduciary duty claim insofar as it is premised on the allegations in paragraph 42 of the Amended Complaint.

        c.    Paragraph 43.        Paragraph 43 of the Amended Complaint contains the allegations that administrators disclosed to Richards and similarly situated participants only the amount of their hypothetical cash balance account values, and not the amount of their frozen benefit derived from the Traditional Plan.  See supra, Part II, ¶ 3.  Richards has submitted a copy of a quarterly statement she received from the administrators, covering the period from July 1, through September 30, 1998, Plf.'s Mem. Opp. Defs.' 2d Mot. Dismiss, Ex. E [Doc. No. 140-6] [hereinafter "1998 Statement"], and a benefits summary she received in July 2004, Id., Ex. F [Doc. No.

12

140-7] [hereinafter "2004 Statement"].  Richards does not dispute the accuracy of the figures in either statement.  She does, however, contend that certain language contained in each statement was inaccurate.

The 1998 statement informs Richards of the value of her cash balance account, but not her frozen benefit amount.  The defendants argue that quarterly benefit statements "do not purport to state the amount of participants' accrued benefits, but merely summarize the quarterly activity in participants' 401(k) accounts (the "Savings Plus" accounts) and cash balance accounts," and that the administrators had no reason to include the frozen benefit value in the quarterly statements because it does not change over time.  Defs.' Mem. Supp. 2d Mot. Dismiss at 19-20 [Doc. No. 129-1].  While the omission of the frozen benefit amount might not be actionable in and of itself, Richards has adequately alleged that the statement that Richards' cash balance account had a "Vested Balance" of $77,714.90 was a misrepresentation, because none of the funds in Richards' hypothetical cash balance account had actually vested.

The administrators produced the 2004 statement in response to a request by Richards' attorney.  "ERISA fiduciaries must provide complete and accurate information in response to beneficiaries' questions about plan terms and/or benefits."  Becker v. Eastman Kodak Co., 120 F.3d 5, 8 (2d Cir. 1997) (reviewing caselaw from other circuits).  Her claim with respect to that statement appears to be premised on the fact that the phrase "Accrued Benefit" was used in the heading of the section of the statement that contained the value of the hypothetical cash balance account, which had not exceeded the value of Richards' frozen benefit and had not actually accrued.  The sentence containing this figure read, "Your current Cash Balance account value from

13

the Plan is: Pension Benefit:  $161,177.49."  2004 Statement, Plf.'s Mem. Opp. Defs.'

2d Mot. Dismiss, Ex. F [Doc. No. 140-7].

   The defendants argue, and Richards does not dispute, that the same statement

contained other figures reflecting the value of the frozen retirement benefit derived from

the Traditional Plan terms.  Nevertheless, Richards has adequately alleged that the use

of the heading "Accrued Benefit Calculated as of July 2, 2004" misrepresents the

nature of the cash balance account, which was not actually an accrued benefit.

   Richards may have known, in light of other plan documents, that the cash

balance account was hypothetical rather than a "vested" or "accrued" benefit.  However,

the court cannot say at this stage in the litigation that "it appears beyond doubt that the

plaintiff can prove no set of facts" to support a finding that the misrepresentations in the

1998 and 2004 statements were material.  Conley v. Gibson, 355 U.S. 41, 45-46

(1957).  It therefore denies the motion to dismiss with respect to the breach of fiduciary

duty claims premised on those misrepresentations.

   In summary, the court denies the motion to dismiss with respect to the breach of

fiduciary duty claims insofar as they are premised on (1) the statements in paragraph

41 of the Amended Complaint, (2) Fleet's alleged statement that "The New Plan makes

good sense for our employees," Am. Compl. ¶ 42 [Doc. No. 124], (3) in Richards'

September 30,1998 Statement, the administrators' representation that the "Vested

Balance" of Richards' cash balance account was $77,714.90; and (4) in the 2004

Statement, the administrators' placement of Richards' hypothetical cash balance

account value under the heading "Accrued Benefit Calculated as of July 2, 2004."

   **3.  Failure to Comply with ERISA §§ 102 and 204(h) as violation of**

**ERISA § 404**

The defendants next urge the court to dismiss Richards' claim that administrators breached their fiduciary duty in violation of ERISA § 404 "by failing to comply with ERISA §102 [setting forth specific requirements for SPDs] and ERISA §204 (h) [requiring advance notice of a significant benefit decrease]," Am. Compl. ¶ 53 [Doc. No. 124], arguing that Richards has not pled a violation of the latter two sections.   The defendant, citing cases from other circuits, argues that section 404 may not be used to require the disclosure of information not required under the specific SPD and notice rules in sections 102 and 204(h).   However, for the reasons below, the court need not reach the question of whether or not an employer may be found to have breached a fiduciary duty under section 404 where it disclosed all information required under the other sections of ERISA.

        a.     Inadequacies in SPD.  With respect to section 102, the Second Circuit has recently stated,

> As we have repeatedly observed, ERISA contemplates that the SPD is an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary. Given their importance as a source of information for plan participants, SPDs are expected to "explain[ ] the full import" of the provisions affecting participants.

Wilkins v. Mason Tenders Dist. Council Pension Fund, 445 F.3d 572, 584 (2d Cir. 2006) (internal citations and quotation marks omitted).  The Second Circuit recognizes "that an SPD need not 'anticipate every possible idiosyncratic contingency that might affect a particular participant's or beneficiary's status." Id. (internal citation and quotation marks omitted).  An SPD "need not discuss every imaginable situation in

15

which such events or actions might occur, but it must be specific enough to enable the ordinary employee to sense when there is a danger that benefits could be lost or diminished." Stahl v. Tony's Bldg. Materials, Inc., 875 F.2d 1404, 1408 (9th Cir.1989), cited with approval in Wilkins, 445 F.3d at 584.

Richards has adequately alleged that the SPD failed to explain the full import of all provisions affecting participants. This is so particularly with respect to the wear-away effect, which is alleged to affect many participants and is not an "idiosyncratic contingency." Although the SPD does disclose that a participant who is similarly situated to Richards receives the greater of the cash balance benefit or the frozen Traditional Plan benefit upon retirement, its description of the manner in which the opening balance of a cash balance account is calculated is allegedly misleading. See SPD, Defs.' Mem. Supp Mot. Dismiss, Ex. B at 22 [Doc. No. 32] ("Your December 31, 1996 pension benefit was converted to a cash value, which is your Opening Account Balance on January 1, 1997."). The SPD does not alert such participants that, as Richards alleges, the administrators included less than the full value of the retirement benefit available to a participant under the Traditional Plan when calculating the opening balance of the cash balance account. See Am. Compl. ¶ 34 [Doc. No. 124]. Even if an employee, who is aware of the "greater of" formula, could reasonably be expected to infer that her opening cash balance account value could potentially be lower than her frozen benefit derived from the Traditional Plan, the SPD does not properly explain the manner in which Traditional Plan benefits are converted to cash balance accounts, let alone the "full import" of that term. Wilkins, 445 F.3d at 584. The court denies the defendants' second motion to dismiss with respect to the claim for a

16

breach of fiduciary duty premised on the SPD's failure to explain the wear-away effect.

With respect to Richards' allegation that the SPD violates section 102 because it fails to explain that the rate of benefit accrual, measured as an annual benefit commencing at age 65, declines with age under the cash balance terms, the court disagrees.  The SPD explains the manner in which administrators calculate quarterly credits to the cash balance accounts.  Although it describes these pay credits in terms of percentages of the value of quarterly compensation when paid, rather than percentages of compensation values expressed as age-65 annuities, this fact is reasonably clear from the language and example on pages 23-26 of the SPD.  The court does not find this description to be incomplete or misleading in light of Richards' factual allegations that describe the Amended Plan.  Richards points to no authority suggesting that either section 102 or section 404 would require disclosure of whether or not a participant's rate of benefit accrual declines with age.  See Register v. PNC Financial Services Group, Inc., No. 04-CV-6097, 2005 WL 3120268, at *9 (E.D.Pa. Nov. 21, 2005) ("ERISA § 102 does not require that the SPD describe how the benefit accrual rates change as participants age.").  Indeed, as discussed in this court's ruling on the first motion to dismiss, ERISA § 204(b)(1)(H)(i) specifically prohibits plans in which participants' rate of benefit accrual is reduced "because of the attainment of any age."  29 U.S.C. 1054(b)(1)(H)(i).  The court therefore grants the defendants' second motion to dismiss with respect to the SPD's failure to explain that the rate of benefit accrual decreases with advancing age.

b.    Failure to Supply Advance Notice of a Significant Benefit Decrease.  At the time of the Plan Amendment, ERISA § 204(h) provided that a

pension plan could "not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date . . . ."  The court does not reach the defendants' argument that this rule did not require them to disclose the manner in which the 1997 amendment would affect participants' rates of future benefit accrual.  Although the defendants' argument on this issue refers to the SPD and a "§ 204(h) notice," Defs.' Mem. Supp. 2d Mot. Summ. J. at 20 [Doc. No. 129-1], there is no allegation in the Amended Complaint that the Plan administrators provided either of these documents 15 days or more before the effective date.  Although the defendants may later provide evidence that they did so, the allegations in paragraphs 39, 40 and 49 of the Amended Complaint are sufficient to support an inference that they did not.  Indeed, even if the court were to assume they did provide some documents in a timely fashion, it lacks information on this motion to dismiss record as to which specific documents they provided at least 15 days prior to the effective date of the plan amendment. Therefore, it denies the motion to dismiss with respect to a breach of fiduciary duty claim premised on a violation of section 204(h).

## V.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part the defendants' second Motion to Dismiss [**Doc. No. 128**].   The court grants the Motion to Dismiss with respect to Count II and that part of Count V premised on the SPD's lack of

"an explicit explanation of how benefit accruals under the plan are reduced by advancing age," Id. at ¶ 51.  It denies the motion with respect to the remaining parts of Count V, as discussed in greater detail in Part IV.B., supra.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 21st day of July, 2006.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge